# EXHIBIT A



ROBLETO LAW

## ENGAGEMENT AGREEMENT FOR LEGAL SERVICES

This Standard Engagement Agreement for Legal Services together with all addenda, (this "*Agreement*") governs the relationship between Robleto Law, PLLC (the "*Firm*") and the undersigned client or clients (collectively, the "*Clients*").

      1.    *Scope of Representation.* The scope of representation shall be limited to the matters set forth in *Addendum A* which is attached and forms a material part of this Agreement.

      2.    *Compensation.* The Clients agree to pay the Firm for services and to reimburse its expenses.

      a.    *Timekeeping and Billing.* The Firm will maintain a record of the time that its professionals spend in service of the Clients under this Agreement. The Firm will bill for services in tenth-hour (six-minute) increments. The Firm will provide periodic invoices and statements to the Clients. Additionally, the Firm will promptly furnish a billing statement to Clients upon request. By default, the Firm transmits invoices and statements via electronic mail, but the Firm will send those records by regular mail at the request of the Clients. The Firm's invoices will include an itemized detail of the tasks performed by each professional and the amount of time for each task.

      b.    *Billing Rates.* A list of the Firm's professionals and the current billing rates applicable to this Agreement are listed in *Addendum B*. The Firm's billing rates are subject to periodic adjustment (typically, once annually, effective at the start of a new year). For travel time, rates shall be reduced to one-half of the otherwise applicable rates if no legal services are performed in the Clients' case during the period of travel.

      c.    *Expenses.* The Clients agree to reimburse the Firm for the actual expenses it incurs on the Clients' behalf. Common expenses include fees for certain court filings, service of process, online research fees, transcript production, postage, printing and mileage.

      d.    *Retainer.* The Clients must fund and replenish a retainer in the amount set forth in *Addendum A*. The Firm will take payments due to it from the retainer. Within 30 days of the date of any invoice, the Clients must make a payment to the Firm in an amount sufficient to replenish the retainer account to its full, original amount in *Addendum A*.

      e.    *Payment Delinquencies.* If the Clients fail to make any payment due under this Agreement when due, interest shall accrue on the delinquent unpaid balance at a rate of one percent per month until paid. The Clients shall be responsible to the Firm for the costs it may incur in its efforts to collect payments due under this Agreement which may include but shall not be limited to court costs and attorneys' fees and costs which may include the fees and costs of outside counsel.

      f.    *Joint and Several Liability.* Each of the Clients understand and agree that they shall be jointly and severally liable for all payment obligations under this Agreement. That means that the Firm will have recourse to any or all of the Clients for payment, without regard to the Clients' respective financial contributions to the cost of this engagement.

g.  *Payment of Co-Counsel Invoices.* The Clients have requested that the Firm associate with Abrams Coate LLP ("*Associate Counsel*"). A separate agreement, styled *Associated Counsel and Attorney Fee and Cost Agreement*, will govern the terms of the Clients' dealings with Associate Counsel. The Clients understand and agree that the retainer described in section 1(d) of this Agreement may be used to pay invoices from Associate Counsel under the terms of its *Associated Counsel and Attorney Fee and Cost Agreement*.

3.  **Conflicts of Interest.** Conflicts of interest may arise when a lawyer simultaneously represents two parties. If two or more individuals or entities comprise the Clients, each such individual and entity agrees to waive any waivable conflict of interest that now exists or that may arise later from such simultaneous representation. The Clients also agrees to waive any now-existing or later-arising waivable conflict of interest against identified in *Addendum A*.

4.  **Termination.** The Clients may terminate the attorney-client representation under this Agreement at any time and for any reason or no reason. The Firm may terminate representation if (i) the Clients (or any of them) refuse to follow the Firm's legal advice concerning an issue material to the representation; (ii) if the Firm believes that it cannot ethically continue to represent the Clients; or (iii) if the Clients (or any of them) fail to meet its payment obligations. If the Firm finds it necessary to seek court approval to withdraw from the representation, termination will not be effective until entry of a final order approving the Firm's withdrawal. The Clients shall remain responsible for all payments due under this Agreement through the date of termination. Further, the payment delinquency provisions of this Agreement, including those related to interest and collection costs, shall remain effective following termination. Within 30 days of the date of termination of representation, the Firm will refund any unearned portion of the Clients' retainer.

5.  **Clients File.** Where possible, the Firm will retain only electronic versions of documents in the Clients' file and will securely destroy hardcopies of non-public documents. If the Clients have paid all of the amounts due to the Firm, the Firm will provide an electronic copy of the file to the Clients upon request without charge. Upon the same condition, the Firm will also provide a paper copy of the file to the Clients upon request at the Clients' expense. When the Clients requests a paper copy of the file or any part of it, the Firm will calculate the cost of the production expense, which the Clients agree to pay prior to the Firm producing such paper copy of the file. The Firm will retain a copy of the Clients' file for five years (unless the Firm is required to preserve the file for another, longer period under the law) after which time the Firm will destroy the file.

6.  **No Waiver.** No waiver of any provision of this Agreement will be valid unless in writing and signed by the person against whom such waiver is sought to be enforced, nor will failure to enforce any right hereunder constitute a continuing waiver of the same or a waiver of any other right hereunder.

7.  **Authority to Bind.** Each person or entity executing this agreement represents that he or she has full and legal authority to execute this agreement for and on behalf of the respective party for which he or she is executing this agreement and to bind that party.

8.  **Entire Agreement.** This Agreement constitutes the entire agreement of the parties relating to the subject matter addressed in this Agreement. This Agreement supersedes all prior communications, contracts, or agreements between the parties with respect to the subject matter addressed in this Agreement, whether oral or written.

**ROBLETO LAW, PLLC**
Three Gateway Center
401 Liberty Avenue, Suite 1306
Pittsburgh, PA 15222

2

www.robletolaw.com
Tel: (412) 925-8194
Fax: (412) 346-1035

AGREED TO BY CLIENTS:                                AGREED TO BY CLIENT/THIRD
                                                     PARTY PAYOR:

_____                    _____
*Robert Nichols Flint Dille*                         *26th Century Ventures LLC*
Dated:                                               *by*:
                                                     *its*:
                                                     Dated:
*Lorraine Dille Williams*
Dated: 10 March 2019

**ROBLETO LAW, PLLC**
Three Gateway Center
401 Liberty Avenue, Suite 1306
Pittsburgh, PA 15222

3

www.robletolaw.com
Tel:  (412) 925-8194
Fax: (412) 346-1035

AGREED TO BY CLIENTS:

AGREED TO BY CLIENT/THIRD PARTY PAYOR:

_____
*Robert Nichols Flint Dille*
Dated:

_____
26th Century Ventures LLC
by: *[signature] Don Murphy*
its: *President*
Dated: *3-7-19*

_____
*Lorraine Dille Williams*
Dated:

ROBLETO LAW, PLLC
Three Gateway Center
401 Liberty Avenue, Suite 1306
Pittsburgh, PA 15222

www.robletolaw.com
Tel: (412) 925-8194
Fax: (412) 346-1035

AGREED TO BY CLIENTS: Liability capped at $2,500.00



_____
Robert Nichols Flint Dille
Dated:

_____
Lorraine Dille Williams
Dated:

AGREED TO BY CLIENT/THIRD PARTY PAYOR:

_____
26th Century Ventures LLC
by:
its:
Dated:

ROBLETO LAW

## ADDENDUM A

1.     *Scope of Representation.* This scope of this representation shall be limited to representing the Clients in protecting their beneficiary interests in the Dille Family Trust (the "*DFT*"), including their rights to the property held, or formerly held, by the DFT. Notably, Louise Geer, a former trustee of the DFT who may claim to remain its trustee, has taken positions in legal matters adverse to the interests of the Clients and the DFT. Ms. Geer's husband and law partner, Daniel Herman, may be continuing to represent Ms. Geer in her purported capacity as the DFT's trustee.

Presently, Ms. Geer and Mr. Herman have filed an action in the Orphans Court of Lawrence County, Pennsylvania, through which we believe they may be seeking to secure control of the DFT and/or dispose of the assets now or formerly held by the DFT. Additionally, those parties have also sought an appeal of the decision of the United States Bankruptcy Court for the Western District of Pennsylvania, dismissing its chapter 11 case with prejudice. While we do not presently anticipate the need to participate in that appeal, if the Client and the Firm later find it prudent to oppose that appeal, the Firm may agree to perform that work (subject to the Firm's determination that it can ethically do that, in view of the information in the "*Identified Conflicts*" section below).

Additionally, as described in section 2(g) of this Agreement, *supra*, the Firm will work cooperatively with Associate Counsel and may seek to have one or more attorneys of Associate Counsel admitted *pro hac vice* in state and federal courts situate in Pennsylvania in furtherance of the Clients' goals for this representation.

2.     *Retainer Deposit.* $5,000.00, replenishing.

3.     *Identified Conflicts.* Parties with now-existing or later-arising waivable, potential or actual, conflicts of interests:

    a.     <u>Robert Nichols Flint Dille and Lorraine Dille Williams</u>. From time to time, the Clients have disagreed on certain matters concerning the DFT, and may have taken adverse positions in litigation. As the Firm understands matters, the Clients' goals and interests are coterminous on the subject of the goals of this representation.

            i.     Notwithstanding that history, each of the Clients agrees to waive all conflicts of interest between one another, to the fullest extent allowable under applicable law and ethical canons.
            ii.     To the extent that a relevant and material conflict arises between the Clients, which any or all of them believe to be a non-waivable conflict, each of the Clients agrees to promptly communicate that conflict to the Firm, in writing.

    b.     <u>Don Murphy, Team Angry Filmworks, Inc. and Associate Counsel</u>. As the Clients are aware, this law firm represents Team Angry Filmworks, Inc. ("*TAF*") and its principal, Don Murphy, in concert with its lead counsel, Abrams Coate LLP, which law firm is anticipated to serve as Associate Counsel under this Agreement. Mr. Murphy, TAF and Associate Counsel may have taken positions in public statements or in litigation that were adverse to the interests of DFT and/or one or both of the Clients. Further, the Firm (as local counsel to Associate Counsel, which served as lead counsel) represented TAF

and Mr. Murphy in the now-dismissed chapter 11 bankruptcy case of the DFT. However, the Firm understands that the Clients, Mr. Murphy, TAF and Associate Counsel have found that their interests are now fully aligned and are not in conflict. In fact, the Clients and TAF/Murphy have been working cooperatively to accomplish their shared goal of effectively monetizing certain of the assets that the DFT once held. Thus, for the work that the Clients have requested the Firm to perform under this Agreement, the parties anticipate that no relevant conflict will arise.

   i. Notwithstanding that history, each of the Clients agrees to waive all conflicts of interest between and among (i) either or both of the Clients; and (ii) Mr. Murphy, TAF and Associate Counsel or any or all of them, to the fullest extent allowable under applicable law and ethical canons.
   ii. To the extent that a relevant and material conflict arises between or among the parties identified in the preceding paragraph 2(a), which either or both Clients believe to be a non-waivable conflict, each of the Clients agrees to promptly communicate that conflict to the Firm, in writing.
   iii. This Agreement will not become effective until and unless Mr. Murphy and TAF have executed waivers of conflicts against either or both of the Clients.

   c.   <u>Robleto Law, PLLC and Its Attorneys</u>. As a result of the conflicts of interests and potential conflicts of interests identified above, the Clients and the Firm (and its attorneys) also may have had past conflicts of interest. The Firm does not believe that any present conflict of interests exists between or among it and the Clients.
   i. Notwithstanding that history, each of the Clients agrees to waive all conflicts of interest between and among (i) either or both of the Clients; and (ii) the Firm and its attorneys or any of them, to the fullest extent allowable under applicable law and ethical canons.
   ii. Consistent with paragraph 4 of this Agreement, pertaining to *Termination*, the Clients may terminate this engagement at any time and for any reason. However, if the Clients do not terminate this engagement, but believe that a relevant and material conflict has arisen between the Client and the Firm, each of the Clients agrees to promptly communicate that conflict to the Firm, in writing.

4.   ***Disclosure and Consent-Third Party Payor Payment of Attorney's Fees and Costs***. Under Rule 1.8(f) of the Pennsylvania Rules of Professional Conduct, an attorney may not accept compensation from one who is not the client without: (1) assuring the client gives informed consent, (2) assuring that there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship, (3) ensuring that information relating to representation of a client is protected as required by Rule 1.6.

The potential adverse consequences of having a Third Party Payor [26th Century Ventures LLC] which is not a party in the designated matter responsible for payment of attorney's fees and costs is that 26th Century Ventures LLC may: (1) attempt to interfere with the attorney-client relationship between the attorney and clients, (2) attempt to interfere with the attorney's exercise of independent professional judgment on behalf of the clients, or (3) seek access to client confidential information or secrets contrary to the wishes of the client.

By signing this Agreement, 26th Century Ventures LLC agrees to pay for all legal services which attorney provides to clients and costs incurred in the representation of client. All clients will remain jointly and severally responsible for and will pay attorney's bills in the event that 26th Century Ventures LLC fails for any reason to pay attorney's bills as they become due. If a refund is due at the conclusion of the representation, the refund will be paid to the person or entity who paid the fees and costs.

**ROBLETO LAW, PLLC**
Three Gateway Center
401 Liberty Avenue, Suite 1306
Pittsburgh, PA 15222

5

www.robletolaw.com
Tel:  (412) 925-8194
Fax: (412) 346-1035

Third Party Payor 26th Century Ventures LLC acknowledges this agreement to pay for attorney's fees and costs does not make Third Party Payor a client of Attorney in the designated matter. Third Party Payor further agrees that they will not interfere with the attorney-client relationship and will not interfere with the Attorney's exercise of independent professional judgment on behalf of the clients. In furtherance of the independent nature of the attorney-client relationship, Third Party Payor acknowledges that it has no right to direct Attorney's handling of Clients' designated matter.

Notwithstanding, Clients have asked Third Party Payor 26th Century Ventures LLC to participate in consultations with Attorney and may continue to do so with the understanding that Third Party Payor's involvement in any communications with Attorney is solely to further the interests of all Clients. Communications involving Third Party Payor 26th Century Ventures LLC are therefore intended to remain confidential and privileged as against persons or entities other than Attorney, Client and Third Party Payor. It is further understood and agreed that Attorney may share confidential information with Third Party Payor except when Clients explicitly direct Attorney to keep information confidential. To the extent Clients explicitly desire communications and information to remain confidential, Third Party Payor agrees that payment and receipt of Client confidential information or secrets shall not in any way limit Client's confidentiality rights or waive any privilege.

Client and Third Party Payor 26th Century Ventures LLC acknowledge they have: (1) read and fully understand this disclosure and consent form, (2) agreed that Attorney may accept compensation from 26th Century Ventures LLC to provide legal services to Client under the terms and conditions of this Agreement and (3) that 26th Century Ventures LLC has been represented and advised by counsel in entering into this Agreement or has waived their right to such representation and advice.

**ROBLETO LAW, PLLC**
Three Gateway Center
401 Liberty Avenue, Suite 1306
Pittsburgh, PA 15222

6

www.robletolaw.com
Tel: (412) 925-8194
Fax: (412) 346-1035



ROBLETO LAW

## ADDENDUM B

1. ***Applicable Billing Rates.***

   | Name | Year Admitted to Pa Bar | Billing Rate |
   |---|---|---|
   | Aurelius P. Robleto | 2005 | 320.00 |
   | Renée M. Kuruce | 2012 | 270.00 |
   | Paralegals | n/a | 110.00 |

2. ***Special Discount Policy for this Engagement.***

   (a) Prompt Payment Discount. A 20% discount will apply to hourly fees paid within 10 days of the date of invoice (here, "paid" means that you have paid the Firm the full amount of all outstanding invoices and the payment(s) has/have actually settled in the Firm's account within the 10-day period. (*N.B.*, this Agreement requires that the Clients maintain a replenishing, "evergreen" retainer. Thus, unless the Firm's fees exceed the amount of that retainer during any billing cycle, the Clients would remain eligible for this discount simply by paying their invoices within 30 days, as permitted under this Agreement.)

   (c) Terms Applicable to Discount.

   (i) The Prompt Payment Discount applies only to the hourly rates of the professionals of this Firm. No discount shall apply to any expenses that we incur on your behalf nor to the rates of any outside professionals or of-counsel of the Firm, if applicable.

   (ii) No Discount will apply to any invoice that is not paid within 10 days from its date of issuance.

   (iii) The Clients will not be eligible for any discount if any of the Firm's invoices are past-due (*e.g.*, if invoice number 890 issues on June 6, 2019 with a 20% discount but a previous invoice number 760 becomes past due on June 10, 2019, the Clients would not be entitled to any discount if it paid both invoices in full on June 12, 2019).